# Henderson *v.* Felts, Adm'r.

## *Action of Detinue.*

1. *The gist of the action of detinue* is the wrongful detainer, and not the original taking.

2. *Detinue; possession in defendant necessary to maintain action of.*—To maintain the action of detinue it must be shown that the defendant, at the time the writ was sued out, had the actual possession, or the controlling power, over the property, for the reason that he may surrender the possession if he elect to do so.

3. *Same; when detinue properly brought.*—Where property had been taken from the possession of defendant, under a search warrant, and brought to the justice of the peace who issued the warrant, who, on hearing, discharged the seizure and directed the sheriff to restore the property to defendant, and suit in detinue was then brought, but before the property had actually reached the defendant's possession,—*held*, that the defendant must be regarded as having power or control over the property, and, therefore, the suit was rightly brought.

APPEAL from the Circuit Court of Macon.

Tried before the Hon. JAMES E. COBB.

This was an action of detinue brought by W. W. Felts, administrator of the estate of one Boston Swanson, against

Lemuel Henderson, appellant, on the 26th of September, 1876. The defendant pleaded the general issue in short by consent.

On the trial, the plaintiff introduced in evidence the papers and record of a suit in detinue, instituted by the defendant Henderson, against the plaintiff's intestate,—the said Swanson—for the property sued for in this action, by which it appeared that said last named suit was begun on the 4th day of January, 1876. Plaintiff also introduced in evidence a replevy bond, executed by said Swanson, deceased, and others as his sureties, for said property, and proved that on the execution, delivery and approval of said bond, the property sued for was placed in his possession by the sheriff as the law required. He proved the value of said property— a mule and horse—and then introduced proof going to show that after the death of said Swanson,—the defendant in the original suit—and while said suit was pending—Henderson obtained possession of the property in dispute, by means of a search warrant issued by a magistrate, or notary public, of Tuskegee beat; that after said property was brought before the said magistrate, and an investigation had, the magistrate ordered the same to be returned to the custody and possession of Henderson. The officer, who executed the process, testified that, upon taking the property—as ordered by the magistrate—to the premises of Henderson, who lived some eight or ten miles from Tuskegee, he informed Henderson that he came to deliver the property to him, and asked what he should do with them—the horse and mule. Henderson requested him to turn them into the lot; that he (the officer) replied that it was not worth while to do so, as he had papers with him by which he was required again to take possession of the horse and mule; and then served Henderson with a copy of the complaint in this cause; and upon the latter declining to execute bond, he (the officer) brought the horse and mule away with him.

The defendant introduced the record, showing the dismissal of the suit of *Henderson v. Swanson*, on the 15th of December, 1876.

The court then charged the jury as follows: 1st. "If the jury believe from the evidence, that the justice of the peace, or notary public, upon the trial of the proceedings under such warrant, had ordered the property in dispute into the possession of defendant, then such order had the effect of investing the defendant with the possession, and that the possession of the property by the officer charged with the execution of said order, was the possession of the defendant, and that detinue against the defendant could be commenced

[Henderson v. Felts, Adm'r.]

on such possession." 2d. "That if the jury believe from the evidence that Henderson had sued plaintiff's intestate, in detinue for the property in dispute in this action, and that plaintiff's intestate had replevied said property, by giving bond according to law, and was in possession of said property at his death, holding the same under and by virtue of his said replevy bond; and if they further believe from the evidence that Henderson took forcible possession of said property, while said suit by him against plaintiff's intestate was pending, and that this suit was commenced before the said suit of Henderson against plaintiff's intestate was dismissed or otherwise disposed of, the plaintiff's right to recover could not be affected by the dismissal of said suit after the commencement of this action."

The defendant reserved exceptions to each of said charges, and now assigns the giving of them as error.

J. B. PAINE, for appellant.—1. In *McArthur v. Carrie's Adm'r*, 32 Ala., the court held, that the charge of the court below, in reference to the possession of the sheriff being the possession of the plaintiff, was incorrect, and said "we think it clear that if the sheriff, under instructions from the plaintiff or her attorney, discharged the first levy before the second writ was sued out, that placed the slaves under the legal control of the plaintiff, and on this point justified the institution of the second suit. After such discharge of the levy, the sheriff's possession ceased to be in his official character, and he held the slaves as the naked bailee of the plaintiff. "In the case at bar, the sheriff still held the property in his official character; he was charged by the court with the performance of an official act in reference to it, and until that act was performed his official duty did not end. The appellant had neither the actual possession, at the time the writ was sued out, or the controlling power over the property. He had been dispossessed by legal process, and, so long as the property was held under that process, the sheriff had a special property in it, and the plaintiff did not have a controlling power over it."—*McArthur v. Carrie's Adm'r*, 32 Ala.

2. Would not the sheriff be liable in his official capacity, if, while holding the property under the magistrate's order, he had converted it, or otherwise unlawfully disposed of it? The defendant could not comply with a demand for the property at the time the writ was sued out; the possession was not in him, either actually or constructively.

3. The authorities all show that to maintain detinue there must be either actual possession, or controlling power over

[Henderson v. Felts, Adm'r.]

the property, in the defendant.—*Walker v. Flinn*, 20 Ala.; *Foster v. Chamberlain*, 41 Ala. 158; 48 Ala. 517, &c. If the sheriff's possession was not the possession of the plaintiff, then the record shows that he had no possession at the commencement of the suit.

4. The court erred in its second charge to the jury—the charge is abstract and not based upon the facts in evidence as shown by the record, and was productive of injury to the plaintiff. The gist of the action of detinue is the wrongful detainer, and it is not material whether the defendant came into possession rightfully or wrongfully.—*Paine v. Hill*, 9 Port. 151.

ABERCROMBIE & GRAHAM, *contra.*—1. There was no error in the first charge of the court below to which appellant excepted.—*McArthur v. Carrie's Adm'r*, 32 Ala. 75.

2. Felts, the appellee, who was the plaintiff in the court below, clearly had the right to the possession of the property sued for at the commencement of his suit, as the legal representative of Boston Swanson, (Code, § 2942), and could, at that time, have maintained his action. The only plea interposed by Henderson was the general issue, which was simply a general denial of the cause of action at the time of the commencement of the suit. The dismissal of the original action of Henderson against Boston Swanson, subsequently to that term, if a good defense at all, should have been specially pleaded, and could not have been made available under the plea of the general issue.—Code, § 2988.

STONE, J.—1. The gist of the action of detinue is the wrongful detainer, and not the original taking.—1 Saund. Pl. & Ev. 436.

2. It is said that to maintain the action, it must be shown the defendant, at the time the suit was sued out, had the actual possession, or the controlling power over the property. *Walker v. Flinn*, 20 Ala. 192. The reason given why it is required that the defendant in such action must have the possession, or power of control, at the time of demand or suit brought, is that he may surrender the possession, if he elects to do so. If out of possession by himself or bailee, he can not surrender possession; and hence, the action can not be maintained against him. "It is generally, therefore, incumbent on a plaintiff in this action, after showing that he has an absolute or special property, and also a right to the immediate possession, also to show an actual possession or a general controlling power over the chattel by the defendant,

[Zeigler v. South & North Ala. R. R. Company.]

at the date of the suit."—*Charles v. Elliott*, 4 Dev. & Bat. 468.

3. In the present case the property had been taken from the possession of Henderson, the defendant, under a search warrant, and brought to the justice or notary public who had issued the warrant. On hearing the evidence he discharged the seizure, and directed the sheriff to restore the property to Henderson.—Code of 1876, § 4021. The property had not in fact reached the defendant's possession when the writ in detinue was sued out. In *McArthur v. Carrie*, 32 Ala. 75, 88, it was said, "We think it clear that if the sheriff, under instructions from plaintiff, or her attorney, discharged the first levy before the second writ was sued out, this placed the slaves under the legal control of the defendant, and, on this point, justified the institution of the suit. After such discharge of the levy, the sheriff's possession ceased to be in his official character, and he held the slaves as the naked bailee of the defendant." We can not perceive any real difference between the question raised in *McArthur v. Carrie*, *supra*, and the question presented by this record. We think Henderson must be regarded as having power of control over the chattels sued for, and that the action was rightly brought against him. The rulings of the Circuit Court were in accordance with these views, and the judgment is affirmed.